26.

People of Puerto Rico, Plaintiff and Appellee, *v.* Eulogio Rivera Gaden, Defendant and Appellant. Same v. Same.

No. 6589 and 6590. Argued June 23, 1937.—Decided July 16, 1937.

*Burset & Pérez Pimentel* for appellant. *R. A. Gómez, Prosecuting Attorney,* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

Three informations were filed in the Municipal Court of Humacao against Eulogio Rivera Gaden, one for carrying weapons, one for aggravated assault and battery, and another for disturbing the peace. The defendant was convicted by the municipal court and appealed to the district court. The three cases were set for trial on September 11, 1936 and consolidated, at the request of the defendant, for the purposes of the trial. The district attorney introduced his evidence and the defendant moved for an acquittal of the offense of disturbing the peace. The court granted this motion. He immediately made the same motion in respect to the offense of carrying weapons and the court denied it. He then introduced his evidence and the court sentenced him to six months in jail for the offense of carrying weapons and to a year in jail for the offense of assault and battery. He appealed to this Court. He assigns a single error in the briefs which he has filed in both appeals. In his opinion the trial court erred in weighing the evidence.

We have carefully studied the transcript of the evidence and the briefs of both parties. The evidence is contradictory on important points, but inasmuch as the trial court

gave full credit to that of the prosecution, which is complete, and there is no showing that the court was moved by bias, prejudice, or partiality, its decision must be sustained.

Reference to the first witness for the prosecution will suffice to show us exactly what occurred. He said:

"On the night to which this case refers, the owner of the café had gone out leaving me in charge; a few minutes later Eulogio Rivera Gaden arrived and asked me for a bottle of rum. I served it to him, he sat down in a booth with several friends and they drank it. When they had finished he stood up and the friends left, and he stayed some time without saying anything about the money for the rum; then I asked him who was going to pay, and he told me that he would arrange it, but that it was on credit, and to tell Toño when he arrived; I told him that I could not do that, because I did not know him well and I was not authorized to extend credit, but he insisted so much that I tell Toño, that he took things from Toño on credit that I said all right, and then he left. In a short while he returned and again asked me for rum, and I told him that if it was on credit that I could not give it to him, because I had told him before that I was not authorized to give credit, and then he told me that it was not on credit; and that if it was on credit and if there was any wrong done then the policeman was there to defend me. During this conversation two of his friends arrived and one of them bought a half-pint of rum and told me to wrap it up, that he wanted to take it with him and they invited him to go. They urged him and insisted so much that he go, that he went, but after he had gone out the door of the café and was already on the road, he said that he wanted a box of matches and they had a row there, and he came for the box of maches and he asked me for it and I gave it to him, and he stayed in the café swearing and talking in a loud voice, and how he was the best man there, and then the officer was there and the officer told him to go home to sleep, he put him outside and told him to go to sleep. Then as soon as he was out of the door of the café he took out a revolver, he put it back of his hip and said to the officer, 'shoot me or I'll shoot you', then the officer thought for a minute, waiting for an opportune moment to throw himself upon him where he was holding the revolver, until he did so and a struggle took place, and during the struggle, as he was stronger than the officer, the officer was having the worst of it, and then the officer called Jenaro López, and Jenaro López

went to help the officer hold Eulogio Rivera, and during the struggle two shots sounded, at that the other two officers Alós and Reyes, who were in the other café, heard and came over and clubbed him two or three times in order to hold him because he was in a bad state."

On further questioning by the district attorney and on cross-examination by the defense the witness insisted that the defendant took out his revolver and challenged the officer who was wounded twice by gunfire as a result of the struggle.

The testimony of the second witness for the prosecution, Jenaro López is less precise and complete than that of the first. For example he says that he heard the words "you shoot me or I'll shoot you" but he cannot say definitely who said them. His direct intervention began when he heard the officer saying "help me Jenaro, I am wounded, come here." Then he ran and found, copying literally from his testimony, "that the officer was in this position, and he had the officer clutched like this, just as I arrived a shot sounded, and in a moment two." Later he states that the defendant "fell to the ground with the officer's revolver." Upon being asked "Was there another revolver there?" he answered; "At that moment, when he fell, I did not see another."

And the testimony of the third and last witness for the prosecution is necessarily still less complete since it is that of one of the officers who arrived to help his fellow-officer after the struggle had begun. The wounded officer did not testify at the trial because he was out of the Island.

The evidence for the defense consisted in the testimony of Santiago Hernández and Florencio Guzmán and in that of the defendant himself. It coincided more or less with that of the prosecution as to the previous events. There is a discrepancy in the description of the intervention of the officer. They say that it was the officer who first attacked the defendant, the latter being forced to defend himself and that the defendant did not take out nor did he have a revolver,

the officer's revolver being the only one which was there and was seized.

The trial judge doubts the existence of the two revolvers. The witnesses for the defense deny it. Two of the prosecution's witnesses refer to the officer's revolver only, but the testimony of the person in charge of the café is so definite that, giving it full credit, the doubt disappears. And it was given full credit by the district court which was in a better position than we are to weigh the veracity of the persons who appeared before it and testified under its direct observation.

In attacking the testimony of José Pérez the defense places great emphasis on the last part of the same, which, copied literally, is as follows:

"Q.—What was done with the revolver he had, were you there? A.—I remained in the café and they continued struggling and in the struggle they fell and went as far as the road.—Q.—And you did not see them where they were struggling for the revolver? A.— No, sir.—Q.—Then you did not see what happened after they left the café?—A.—No, sir.—That is all."

The final negative of the witness in answer to the cross-examination of the defense does not have the scope the latter attributes to it. It is limited to what occurred after the struggle had begun, when the opponents fell and continued to the road. The witness could see the first incidents from his position. They took place inside the café and at its entrance. It was "upon stepping down from the doorway of the café" that the defendant "took out the revolver, put it behind his hip and said to the officer, 'you shoot me or I'll shoot you.'" And according to the testimony of Jenaro López the door was lighted.

And as to the existence of the two revolvers and the defendant's having fallen with the officer's revolver in his hand when he was clubbed by the officers who arrived to help their fellow-officer, while indeed, as we have already said, doubts

30

are raised, it is not inconceivable. The defendant was stronger than the officer and in the struggle, which lasted some time and had several phases, he could have disarmed him. The fact that the defendant's revolver was not seized does not necessarily imply that he did not have it or use it.

The judgments appealed from must be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.